**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **DEBRA ODOM,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **GILBERT J. MATTEO, MURRAY** | : | **CIVIL ACTION NO.** |
| **PENDLETON, and CITY OF** | : | **3:08-cv-1569(VLB)** |
| **WATERFORD,** | : | |
| **Defendants.** | : | **February 3, 2010** |

**MEMORANDUM OF DECISION GRANTING IN PART**
**AND DENYING IN PART DEFENDANTS PENDLETON'S AND**
**CITY OF WATERFORD'S MOTION TO DISMISS [Doc. #28]**

The Plaintiff, Debra Odom (hereinafter "Plaintiff" or "Odom"), filed this

action for damages against the Defendants, Officer Gilbert Matteo, Waterford

Chief of Police Murray Pendleton, and the City of Waterford.  The Plaintiff's

amended complaint asserts a total of twelve counts, including claims for violation

of 42 U.S.C. § 1983, negligence, assault and battery, false imprisonment,

negligent infliction of emotional distress, and indemnification pursuant to

Connecticut General Statute § 7-465.  Defendants Murray Pendleton and the City

of Waterford (hereinafter collectively referred to as the "Defendants") move to

dismiss certain of the claims asserted against them in the amended complaint

pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief

can be granted.  Specifically, the Defendants move to dismiss Count Seven as

against the City of Waterford for failure to properly allege a claim against a

municipality pursuant to 42 U.S.C. § 1983.  In addition, the Defendants move to

dismiss Count Thirteen in its entirety on the basis that they are entitled to qualified immunity.  The Defendants also move to dismiss Count Fifteen its entirety for failure to properly allege an official capacity claim pursuant to 42 U.S.C. § 1983.  Lastly, the Defendants move to dismiss Counts Fourteen and Sixteen because they are predicated entirely on counts Thirteen and Fifteen, respectively.  For the reasons stated below, the Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. <u>Factual and Procedural Background</u>

The following facts alleged in the Plaintiff's amended complaint are relevant to the Defendants' motion to dismiss.  On September 22, 2006, at approximately 10:30 p.m., Odom was pulled over by Officer Matteo while operating her motor vehicle on Route 32, a public highway in Waterford, Connecticut.  While Odom was pulled over, Matteo shined his spotlight directly into her car.  When Matteo approached the car, Odom informed him that she had a brain injury that effected her vision, and that bright lights could cause her to experience a seizure.  Odom also provided Matteo with a card which explained, in writing, that she was a brain injury survivor and that her injury may affect her vision and her ability to understand and respond to the officer, and that she may exhibit signs of anxiety, agitation, confusion, and delayed responses.  The card also listed Odom's mother as a contact person who could be reached by law enforcement personnel for assistance.  Odom requested that Matteo turn off the

2

spotlight, but Matteo refused.  Matteo also completely disregarded the card, and threw it back at Odom without reading it.

Moments later, Odom's mother called her cell phone and Odom answered the call.  Odom handed Matteo her phone so that her mother could explain Odom's condition.  Matteo took the phone and threw it on the dashboard and began screaming at Odom.  Matteo reached into the car and grabbed Odom's arm, causing her to fear for her safety and causing injury to her arm.  Matteo then demanded that Odom get out of the car.  Odom told Matteo that she would get out of the car when another officer arrived at the scene.  Matteo continued to yell and act aggressively, including reaching into the car several times to try and pull Odom out of the car.  During this time, Odom informed Matteo that she felt scared and that she thought he was trying to hurt her.  At some point, Matteo took out his Taser gun and shot it into Odom's leg, thereby discharging 50,000 volts of electricity into her body and causing her to experience severe pain and lose control of her muscles.  Matteo then forcibly removed Odom from her vehicle and forced her to the ground where she was handcuffed with her arms behind her. Odom was arrested and charged with violations of Connecticut General Statutes. She was fingerprinted, photographed, and processed, including being held on $2,500 bond as a result of the criminal charges brought against her by Matteo.

Odom alleges that she has suffered severe personal injuries as a result of Matteo's conduct, including puncture of her leg from the Taser probe, loss of muscle control, abrasions and contusions on her arms, legs, and face, neck

sprain and strain, headaches, shock to her nervous system, and emotional distress.  She further alleges that she has incurred expenses for hospital care and treatment for her injuries and will continue to incur further expenses in the future.  Finally, she alleges that she has suffered lost wages, loss of earning capacity, and a loss of enjoyment in life.

Odom filed this action in Connecticut Superior Court on September 18, 2008.  On October 14, 2008, the Defendants removed the case to this Court on the basis of federal question jurisdiction because Odom asserted claims pursuant to 42 U.S.C. § 1983.  On February 17, 2009, Odom filed an amended complaint.  On March 15, 2009, Defendants Pendleton and the City of Waterford filed the instant motion to dismiss.  Defendant Matteo, who is represented by separate counsel, filed an answer to the amended complaint on March 17, 2009.

## II.  Discussion

The Supreme Court clarified the standard governing a motion to dismiss for failure to state a claim in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), stating that, "[u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 1949.  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

4

as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal citations omitted).

## A.  Count Seven

Odom brings Count Seven against Matteo and the City of Waterford claiming that Matteo violated her rights under the Fourth and Fourteenth Amendments during the traffic stop.  Furthermore, Odom alleges that the City of Waterford is liable for Matteo's actions because they were undertaken pursuant to authority granted to him by the City of Waterford and his actions represented official municipal policy and practice.

The Defendants move to dismiss Count Seven as against the City of Waterford on the ground that Odom has failed to establish a 42 U.S.C. § 1983 claim pursuant to Monell v. Dep't of Social Services, 436 U.S. 658 (1978).  In Monell, the United States Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is liable under § 1983."  Id. at 694.  Further, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability.  Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy

5

with respect to the action ordered.  The fact that a particular official - even a policymaking official - has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."  <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 481-83 (1986) (internal citations omitted).  "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality.  Similarly, when a subordinate's decisions is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies."  <u>St. Louis v. Paprotnik</u>, 485 U.S. 112, 127 (1988).

Here, Odom claims that the City of Waterford is liable for the conduct of Matteo because he was acting in his official capacity as a Waterford police officer.  Odom seeks relief for alleged constitutional violations that occurred during the traffic stop.  Specifically, Odom alleges that Matteo violated her Fourth Amendment protections against unreasonable search and seizure and her Fourteenth Amendment right to due process of law.  However, courts have held that police acts similar to the actions taken by Matteo are considered to be discretionary.  <u>See</u>, <u>e.g.</u>, <u>Castorina v. Stewart</u>, No. CV 950324487, 1998 WL 309393, at *6 (Conn. Super. Ct. June 3, 1998) ("the process by which a police

6

officer decides to make an arrest involves discretionary actions"); Galindez v. Miller, 285 F. Supp. 2d 190, 195 (D. Conn. 2003) (holding that the manner in which a police officer makes an arrest, including a determination of what level of force to use under the circumstances, "appears to fit" within the framework of police discretion).  As the acts employed by Matteo were discretionary, the City of Waterford may only be held liable if Matteo is found to be the final policymaker with respect to those acts.  This is not the case.  In the amended complaint, Odom states that the Chief of Police, not Matteo, has the duty to supervise, manage, and control the officers employed by the City of Waterford.  Because Matteo's actions during the arrest were discretionary, and Matteo is not the final policymaker with respect to police conduct, the City of Waterford cannot be held liable pursuant to 42 U.S.C. § 1983 as to Count Seven.

In her brief in opposition to the motion to dismiss, Odom does not address Monell or its progeny, but instead urges the Court to recognize municipal liability for violations of the Connecticut State Constitution.  However, because Odom has failed to establish a viable Monell claim against the City of Waterford for violations of the United States Constitution, her claim alleging municipal liability for violations of the Connecticut State Constitution also fails.  See, e.g., Seri v. Town of Newton, 573 F. Supp. 2d 661, 670 (D. Conn. 2008) (granting summary judgment and dismissing claim against municipality for violations of the Connecticut Constitution on the basis that such a claim failed under the reasoning of Monell); Mildaro v. City of Middletown, No. 3:06CV01071, 2009 WL

801614, at *7 n.6 (D. Conn. Aug. 28, 2008) (stating that a claim that fails under
<u>Monell</u> also fails under the Connecticut State Constitution).  Therefore, Count
Seven is dismissed as against the City of Waterford.

### B.  <u>Count Thirteen</u>

Odom brings Count Thirteen against Defendants Pendleton and the City of
Waterford alleging negligence.  Odom alleges that Pendleton breached his duty
as Chief of the Waterford Police to "supervise, manage, and control police
officers employed by the City of Waterford."  Specifically, Odom claims, variously
and alternatively, that Pendleton was negligent in that he adopted a policy which
allowed Matteo to carry and use a Taser that he was not properly trained to use,
failed to supervise Matteo's actions as they related to his carrying and use of a
Taser, failed to adequately train Matteo in determining a suspect's health
condition before deploying a Taser, failed to insure that Matteo would only
discharge a Taser in accordance with Connecticut and City of Waterford policies
and procedures, and failed to adopt proper policies regarding the use of Tasers.
In addition, Odom claims that the City of Waterford is liable for the acts and
omissions of Pendleton because he was acting in his official capacity as Chief of
Police.

The Defendants move to dismiss Count Thirteen on the basis of qualified
immunity.  "The [common-law] doctrines that determine the tort liability of
municipal employees are well established . . .  Generally, a municipal employee is
liable for the misperformance of ministerial acts, but has a qualified immunity in

8

the performance of governmental acts . . .  Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature . . .  The hallmark of a discretionary act is that it requires the exercise of judgment . . .  In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion."  <u>Martel v. Metropolitan District Comm'n</u>, 275 Conn. 38, 48-49 (2005) (internal citations and quotation marks omitted).  "Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society.  Discretionary act immunity reflects a value judgment that - despite injury to a member of the public - the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury.  In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion.  This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts."  <u>Doe v. Peterson</u>, 279 Conn. 607, 614-15 (2006) (internal citations and quotation marks omitted).

The Connecticut legislature codified the tort liability of municipalities in Conn. Gen. Stat. § 52-557n, which in subsection (a)(1) thereof states that "[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by:  (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . ."  However, §52-557n extends the same discretionary act immunity that applies to municipal officials to the municipalities themselves.  Section 52-557n (a)(2)(B) states that municipalities will not be liable for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

In this case, Odom claims that Pendleton has a duty to supervise, manage, and control police officers employed by the City of Waterford, including properly training them in conducting motor vehicle stops and in the use and deployment of weapons.  Odom argues that Pendleton was negligent for (1) adopting a policy that allowed Matteo to carry a Taser; (2) failing to properly train Matteo in the proper use of a Taser; and (3) allowing Matteo to carry a Taser that he was not properly trained to use.  However, in Connecticut, the operation of a police department is a discretionary governmental function.  This includes the training and supervision of police officers.  See, e.g., Coletosh v. City of Hartford, No. CV 970573462S, 1999 WL 259656, at *1 (Conn. Super. Ct. Apr. 13, 1999) (in a case alleging excessive force on the part of Hartford police officers, instructing,

10

supervising, controlling and disciplining police officers were found to be discretionary acts as a matter of law); <u>Cook v. City of Hartford</u>, No. CV 89-0362482, 1992 WL 220102, at *2 (Conn. Super. Ct. Aug. 31, 1992) ("The act of training and supervising police officers is clearly a discretionary governmental function.  Consideration of whom to hire, how to train such people, and how to supervise police officers on the job are decisions requiring the use of judgment and discretion.  A municipality cannot employ a standard list of actions which must be taken in utilizing its police department."); <u>Huges v. Hartford</u>, 96 F. Supp. 2d 114, 119 (D. Conn. 2000) ("extensive and near-unanimous precedent in Connecticut clearly demonstrates that the acts or omissions alleged in plaintiff's complaint - the failure to screen, hire, train, supervise, control and discipline - are discretionary acts as a matter of law").  Because the acts or omissions alleged in the amended complaint involving the Defendants' failure to manage, supervise, control and train police officers were discretionary as a matter of Connecticut law, Odom's claim is barred unless one of the exceptions to governmental immunity applies.

There are three exceptions to discretionary act immunity.  "Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity - to encourage municipal officers to exercise judgment - has no force.  First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure.  Second, liability may be imposed

11

for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws.  Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . ."  Peterson, 279 Conn. at 615-16 (internal citations and quotation marks omitted).

Here, Odom argues that the identifiable person / imminent harm exception applies, and therefore, governmental immunity does not bar her claim.  Odom alleges that she was an identifiable person who was placed in imminent harm when she was Tasered by Matteo.  Odom argues that she was exposed to imminent harm as a result of Pendleton's and the City of Waterford's failure to properly train and supervise police officers in the use of a Taser.

The identifiable person / imminent harm exception applies "not only to identifiable individuals but also to narrowly defined classes of foreseeable victims."  Burns v. Board of Education, 228 Conn. 640, 646 (1994).  "In delineating the scope of a foreseeable class of victims exception to governmental immunity, [Connecticut] courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim."  Id. at 647.  This exception has received limited recognition under Connecticut law.  See Evon v. Andrews, 211 Conn. 501, 507 (1989).

12

In <u>Evon</u>, the plaintiff's decedent filed an action against the city of Waterbury and its officers alleging that they had been negligent in failing to reasonably inspect and enforce statutes regarding the maintenance of a multifamily rental unit that the decedent was occupying when it was destroyed by fire.  The Court concluded that the imminent harm exception for discretionary acts did not apply on the facts of the case because "[t]he risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future . . .  In the present instance, the fire could have occurred at any future time or not at all."  <u>Id.</u> at 508; <u>see</u> <u>also</u> <u>Hughes</u>, 96 F. Supp. 2d at 120 (holding that, where the plaintiff "has not alleged any way in which he was placed at greater harm than any other member of the general public, and in fact places himself only as one member of the community potentially exposed to officer misconduct[,] . . . [t]he potential harm resulting from the failure to properly train, hire, and supervise police officers could occur to anyone at any time in the future, or not at all").

By contrast, in <u>Burns</u>, the plaintiff, a school child, slipped and fell due to icy conditions in a main accessway of the school campus.  228 Conn. at 642.  The Court held that the plaintiff fell within the identifiable person / imminent harm exception, reasoning that, unlike the situation in <u>Evon</u>, "this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly 'treacherous' area of

the campus.  Further, the potential for harm from a fall on ice was significant and foreseeable."  Id. at 650.

Similarly, in Purzycki v. Fairfield, 244 Conn. 101, 103 (1998), the plaintiffs, a second grade student and his father, sought damages for injuries sustained by the child when he was running and was tripped by a fellow student in an unsupervised school hallway during a lunch recess period.  The hallway was not monitored, but teachers in the classrooms abutting the hallway were instructed to keep their doors open so that they could hear or see any activity in the hallway. Id. at 104.  The jury returned a verdict in favor of the plaintiffs, stating in an interrogatory that the defendants, the principal and board of education, had subjected the child to imminent harm.  The trial court granted the defendants' motion to set aside the verdict on the ground that the plaintiffs failed to prove that the child was subject to imminent harm.  The Connecticut Supreme Court reversed, holding that there was sufficient evidence from which the jury reasonably could have found that the imminent harm exception applied.  The Court found that the facts of the case were more analogous to Burns than to Evon.  Id. at 109-110.  The Court explained that "the present case involves a limited time period and limited geographical area, namely, the one-half hour interval when second grade students were dismissed from the lunchroom to traverse an unsupervised hallway on their way to recess.  Also, it involves a temporary condition, in that the principal testified that every other aspect of the lunch period involved supervision.  Finally, the risk of harm was significant and

**14**

foreseeable, as shown by the principal's testimony 'that if elementary schoolchildren are not supervised, they tend to run and engage in horseplay that often results in injuries.'"  Id. at 110.

At this stage of the litigation, the Court is not convinced that Odom's negligence claim against Pendleton and the City of Waterford should be dismissed on the basis of governmental immunity.  Odom complains about the failure to train police officers not to use a Taser on a particular class of individuals, specifically, individuals with medical conditions which render them more susceptible to harm from being Tasered.  A Taser is an electronic weapon the use of which on individuals with certain known preexisting conditions, such as neurological conditions, may be ill advised.  Implicit in Odom's claim is that her neurological condition rendered her more susceptible to injury from being Tasered and that Pendleton and the City of Waterford failed to train officers on the proper forbearance from the use of a Taser on individuals whom they knew had such conditions.  Therefore, she potentially falls within a foreseeable class of victims who are particularly susceptible to harm from being Tasered as a result of a preexisting medical condition.

With respect to the imminency of the harm, because Odom disclosed to Matteo her health condition, he knew or had he been properly trained would have known that she was susceptible to imminent harm if he Tasered her. Furthermore, because of the propensity of a Taser to cause greater harm to persons who have certain conditions, the failure to train an officer to forbear in

the use of a Taser on such persons places them at risk of harm that is both "significant and foreseeable." Purzycki, 244 Conn. at 110.  The Court is aware that the Connecticut Supreme Court has further explained that an imminent harm is a harm that involves a "limited time period and limited geographical area" as well as a "temporary condition."  Id.  However, as the dissent in Purzycki pointed out, the harm at issue in that case was only "limited" in the sense that the majority was able to assess a finite half-hour period of time in which the harm may occur, since the half-hour period in which second grade students were dismissed from the lunchroom to traverse an unsupervised hallway on their way to recess had existed for the past twenty two years.  Id. at 118-19 (Callahan, J., dissenting).  Here, the amended complaint alleges that the harm to Odom occurred in the short period of time after she informed Matteo of her health condition.  As in Purzycki, it could be established in this case that the risk of harm resulting from the alleged failure to train was limited to a particular geographical area, e.g., a particular highway, during a finite period of time during which Matteo stopped Odom on Route 32.  Therefore, Odom's claim potentially falls within the identifiable person / imminent harm exception to governmental immunity for discretionary acts, and will not be dismissed at this time.  Cf. Peters ex rel. Estate of Peters v. Town of Greenwich, No. CV950147192S, 2001 WL 51671, *7-*9 (Conn. Super. Ct. Jan. 2, 2001) (holding that plaintiff sufficiently alleged exception to governmental immunity where the defendant police officers and supervisory officials had notice of threatening behavior by killer such that threat

16

was foreseeable, and threat was limited in duration to period in which killer had returned to Connecticut and limited in geographical scope to location of plaintiff's decedent in relation to location of killer within Greenwich, Connecticut).

Assuming the facts alleged in the amended complaint are true, this is not a case in which qualified immunity is intended to attach.  Because a Taser is well known to be ultra-hazardous to persons with certain health conditions, a police officer's duty to forbear from using a Taser on a person whom the officer knows has such a condition is clear and unequivocal, and the duty of supervisory officials to train police officers to forbear from the use of a Taser on such individuals is likewise clear and unequivocal.  Accepting as true the facts alleged in the amended complaint, Pendleton and the City of Waterford had knowledge of the Taser's unique propensity for harm, and they could have trained officers to discern the specific subject time and place of that harm.  In circumstances such as this, where it is alleged that the police department failed to train an officer to forbear from using a weapon on a person with acute sensibilities to that weapon, the broad societal interest in having officers free to exercise judgment in their official functions is outweighed by the benefits to be had from imposing liability for clearly foreseeable injury to members of the public whom the government is charged with serving and protecting.  It may well prove that the facts as developed through discovery challenge the Plaintiff's assertions, but at this stage of the litigation, the pleadings militate against dismissal of Count Thirteen as a matter of law.

17

## C.  Count Fourteen

In Count Fourteen, Odom asserts that the City of Waterford is liable for indemnification resulting from Pendleton's alleged negligence as set forth in Count Thirteen, pursuant to Conn. Gen. Stat. § 7-465.  For the reasons explained above, the Court declines to dismiss Count Thirteen.  Accordingly, Count Fourteen may proceed as well.  See Wu v. Town of Fairfield, 204 Conn. 435, 438 (1987) (municipal liability by indemnification under Conn. Gen. Stat. § 7-465 "is predicated on prior findings of individual negligence on the part of the employee and the municipality's employment relationship with that individual").

## D.  Count Fifteen

In Count Fifteen, Odom brings a 42 U.S.C. § 1983 claim against Pendleton and the City of Waterford, claiming that Pendleton "adopted policies regarding the use of force by police officers and the use of Taser guns which he knew would increase the level of police violence in Waterford" and which resulted in Odom's injuries.

The Defendants argue that Odom's amended complaint is inadequate as a matter of law and must be dismissed because Odom fails to sufficiently allege a causal connection between any official policy instituted by the Defendants and her injuries.

Following Monell, "a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'  Only where a municipality's failure to train its employees in a relevant respect evidences a

18

'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Canton v. Harris, 489 U.S. 378, 389 (1989).  "[M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembauer, 475 U.S. at 483-84.

"In order to establish that a failure to train constitutes deliberate indifference to the constitutional rights of the public, a plaintiff must establish (1) that the policymaker knows 'to a moral certainty' that his employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and finally (3) that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  Wilson v. City of Norwich, 507 F. Supp. 2d 199, 210 (D. Conn. 2007) (citing Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)).  Further, "a supervisor may be found liable for his deliberate indifference to the rights of others . . . for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury."  Id. at 209 (quoting Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002)).  "Plaintiff must establish defendant's deliberate indifference by showing

19

that the need for more or better supervision to protect against constitutional violations was obvious, but that defendant made no meaningful attempt to forestall or prevent the unconstitutional conduct." Id.

Here, Odom's amended complaint alleges injuries resulting from official policies instituted by Pendleton and the City of Waterford.  She recites a number of purported failures on the part of the Defendants, including the failure to adequately train police officers and the practice of permitting excessive use of force, including the use of Tasers.  As discussed above in the context of Count Thirteen, Pendleton and the City of Waterford had an obligation to train police officers regarding the proper use of a Taser, and specifically, to train police officers to forbear from using a Taser on a member of the public with a medical condition rendering her particularly susceptible to harm from being Tasered.  If Odom's allegations are true, the failure of Pendleton and the City of Waterford to properly train and supervise Matteo could constitute deliberate indifference to the constitutional rights of the public.  Accordingly, the Court will not dismiss Count Fifteen at this stage of the proceedings.

### E.  Count Sixteen

In Count Sixteen, Odom asserts that the City of Waterford is liable for indemnification resulting from Pendleton's actions set forth in Count Fifteen, pursuant to Conn. Gen. Stat. § 7-465.  For the reasons explained above, the Court declines to dismiss Count Fifteen.  Accordingly, Count Sixteen may proceed as well.  See Wu, 204 Conn. at 438 (municipal liability by indemnification under

Conn. Gen. Stat. § 7-465 "is predicated on prior findings of individual negligence on the part of the employee and the municipality's employment relationship with that individual").

### III.  Conclusion

Based upon the above reasoning, the Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Count Seven is dismissed as against the City of Waterford only.  The Court declines to dismiss Counts Thirteen, Fourteen, Fifteen and Sixteen.

IT IS SO ORDERED.

_____/s/_____

Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  February 3, 2010.

21